Ronald Charles COBB, Appellant,

v.

The STATE of Texas, Appellee.

No. 37572.

Court of Criminal Appeals of Texas.

Jan. 13, 1965.

Rehearing Denied March 3, 1965.

Robert B. Maloney, Pat McDowell, Dallas, for appellant.

Henry Wade, District Attorney, Frank Watts, W. P. Bondies, Jr. and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

MORRISON, Judge.

The offense is murder; the punishment, 99 years.

The homicide occurred at the home of the deceased, a single man. Only he and three of his companions were present, appellant being one of them, and we will summarize the testimony of each of them. Linda Davis, the 18 year old sister of David Davis, testified that she, her brother and appellant went to the deceased's house on foot on the night in question for the purpose of listening to hi-fi records, that shortly after their arrival the three men left to get some beer, and that she was left there to take any telephone calls for the deceased, who was an X-Ray technician on call at a hospital. She stated that while the men were away a call did come for deceased and upon their return she notified deceased and he left. During his absence appellant stated that he was going to get deceased's money when he came back. Upon his return, she and appellant, who was her then intended fiancé, were in the bedroom on the bed and her brother, David, was in the living room listening to records. Shortly thereafter she asked appellant to get her a cigarette and within a few moments after appellant went into the living room she heard a scream or moaning noise coming from the living room and upon entering she saw deceased prone on the floor and appellant standing over him. She became frightened, called to her brother to get her purse and ran out the back door. Some distance from the house she was overtaken by her brother, David, and together they fled for a number of blocks until they were overtaken by appellant who was driving deceased's automobile and who demanded that they enter the car. She complied because of her fear of appellant and he drove her home, and appellant and her brother, David, left.

David Davis, age 20, testified that he had known the deceased only two days and that during his absence from the house on his call to the hospital appellant had suggested that they take deceased's money upon his return. He stated that while deceased was away he and appellant engaged in some horse play with two butcher knives which they had found in deceased's kitchen while looking for a beer opener, and at the ter-

mination of the sword play he put his butcher knife down, but that appellant put the one he had been using in his right hip pocket. He stated that upon deceased's return from the hospital he was seated on a couch some distance from the record player and he asked the deceased to change the records. As deceased was in the act of doing so and while leaning over the machine appellant came from the bedroom, approached deceased from the rear, pushed deceased's head forward with his left hand and at the same time drove the butcher knife into deceased's stomach. He stated that he responded to his sister's plea to get her purse and ran after her. After he and his sister were overtaken by appellant, who was driving deceased's automobile, some ten blocks away from deceased's house, they drove to his house, let his sister, Linda, out, and he accompanied appellant in his flight. During the course of such flight, appellant gave him some money which he placed among some newspapers on the floor board where it was found by the highway patrol when they stopped the automobile near Decatur, some 60 miles to the north.

It will be unnecessary to recount the means by which the two were captured or the proof as to the cause of death because of appellant's testimony. His testimony was substantially the same as the two preceding witnesses except that he denied having voiced any plans to take deceased's money and gave the following version of the homicide. He stated that he met deceased two nights before the night in question, had spent the night with him alone in his home upon the night of their meeting during which time he had repulsed deceased's homosexual advances. As to the night in question he stated that after deceased's return from the hospital and when he came out of the bedroom deceased had made some disparaging remarks about Linda which made him mad, whereupon he drew the butcher knife from his pocket "and I thrust it at him, and just not to hurt him, but at that time he turned around

(from the record player) to take a step forward to me, and I didn't have any time to drop the knife or stop the motion of the knife before * * * it killed him." He admitted rifling deceased's pockets, securing deceased's billfold and money which were recovered from his person by the highway patrol at Decatur.

The jury resolved appellant's alleged defense of accident against him, and we find the evidence sufficient to support the conviction.

Appellant objected to the court's charge on accident in that it was limited in accordance with the terms of Article 42, Vernon's Ann.P.C., which eliminates accident as a defense when a homicide is committed while in the act of preparing to commit a felony. He contends that the evidence did not warrant the submission of such an issue.

We find no error in the Court's charge on accident, because the record reflects that both witnesses Linda and David Davis testified of appellant's declared intention to get the deceased's money when he returned to the house, that the appellant did not discard the butcher knife previously used by him in sword fighting, but that he placed it in his back pocket and that such a knife was drawn from his pocket and used by him to stab deceased. It was further shown, and appellant admitted, that after the stabbing he did take the money and certain other effects from the body of the deceased and fled the scene. The charge is substantially the same as that set forth in Cook v. State, Tex.Cr.App., 211 S.W.2d 224, which has been cited with approval by this Court.

He next contends that the court erred in not declaring a mistrial when the prosecutor, in discussing the credibility of the appellant, who had a long criminal record, as opposed to that of David Davis said "David Davis had never been to the penitentiary," which fact he says was not supported by the record. There is an un-

explainable conflict between the formal and informal bill of exception on this question. In one it is shown that the court sustained appellant's objection and instructed the jury not to consider the statement, while in the other it is shown that the court overruled the objection. Both show that appellant made no motion to have the jury instructed not to consider the same. Be that as it may, we conclude that no reversible error is reflected for the following reasons. David Davis testified that he had been no billed by the grand jury for the offense of murder, that he had been indicted for robbery, but had not been tried for such latter offense. The prosecutor had, prior to making the statement complained of, argued without objection as follows: "There is no evidence in here that David Earl Davis is not a credible witness, and you can bet your bottom dollar that if he had ever been convicted of stealing, they would have brought it out." Such argument, under the circumstances, would not constitute reversible error. Vineyard v. State, 96 Tex.Cr.R. 401, 257 S.W. 548.

Finding no reversible error, the judgment is affirmed.